[Crim. No. 3515.   Second Dist., Div. Two.   Dec. 18, 1941.]

THE PEOPLE, Respondent, v. TONY S. HOLQUIN, Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

MOORE, P. J.—This is an appeal from the order denying a new trial and from the judgment of conviction, after a verdict of guilty of rape.

The victim was a young married woman eighteen years of age. Appellant had called at the home of the prosecutrix about 9:30 a. m. on May 20, 1941. Her husband had departed for his work at an early hour and she had lain down for additional repose. She opened the door at the time appellant knocked and he entered stating that he desired to borrow $1 from her husband. He stated on entering her apartment that he had had a fight with a lady and was going to go to Mexico. He seated himself at the foot of her bed while she sat at the head of it. After they had talked about ten minutes, she stood up. He grabbed her and forced her on to the bed and committed the act of sexual intercourse. She protested and resisted with all her might but to no avail. When she screamed, he put his hand on her mouth. She tore his shirt and scratched his face, during the time that he applied force in order to consummate his diabolical act. After his crime he stated that he was sorry and asked her forgiveness. She followed him from her apartment down stairs and immediately asked the landlady to call the police. A party was waiting for appellant in an automobile in the street. Together they drove away. She called her husband by telephone and he arrived at 10:45 a. m. Upon his arrival he found her excited and nervous, her hair disheveled, waiting for him at the front of the apartment house. He telephoned the police who responded at 11:30 o'clock and they found her condition as that described above and conveyed her to the hospital for examination. The husband then accompanied the officer in search of appellant and they found him in the company of the husband's brother about 4 o'clock in the afternoon. The officers observed that he had scratches on his neck and that his shirt was torn in the front as had been

related by his victim. On the way to the police station, appellant jumped from the automobile, ran across Broadway and was caught one block way.

Appellant admits the act of sexual intercourse but maintained that it was with the consent of the prosecutrix. He denied receiving the scratches at her hands.

The primary ground for appeal is that the verdict is contrary to the evidence and that the story of the prosecutrix is so incredible and improbable that this court should declare it unworthy of belief. In support of this contention, appellant points out that within five minutes of his arrival, the prosecutrix informed him that she was pregnant and had been for two months; that she testified that he did not choke her; that upon his arrival she left the front door unlocked; that although she professed to having been fearful, yet she did not attempt to escape through the back door; that while she had known him only four months yet she did not like him and always avoided his presence; that she did not tell him to leave but at the time of his departure she followed him downstairs; that she was suspicious of him during the entire 10 minutes before he removed her clothes and attacked her.

Notwithstanding the circumstances pointed out as favorable to his contention, there is nothing in the testimony of the prosecutrix to impose upon the credulity of the court or jury. She was a small woman, weighing only 98 pounds while appellant weighed 170 pounds. She made a complaint immediately; she called for her husband; she had the police summoned; she was excited, nervous and her hair was disarranged. Her conduct in dealing with appellant upon his entry into her room was well calculated to convince the jury that she was fearful of appellant and that, in all probability, she calculated that although she feared him, yet since he was her husband's friend, she might best dispose of his presence by quiet friendliness and by informing him of her condition. But the tear in his shirt and the scratches on his face reported by the prosecutrix to the police were found when they arrested him five hours later.

It cannot be said that the testimony of a prosecutrix is inherently improbable merely because it contains contradictions or inconsistencies. █ To justify a reversal because of the incredibility of the testimony, its improbability must

be so obvious as to leave the court no recourse, without self-stultification, except to reverse the judgment. (*People* v. *Becker,* 140 Cal. App. 162 [35 Pac. (2d) 196]; *People* v. *Amadio,* 25 Cal. App. 729 [145 Pac. 151].)

It is not sufficient that the testimony contain unusual circumstances. (*People* v. *Collier,* 111 Cal. App. 215, 226 [295 Pac. 898].) It is the peculiar and exclusive province of the jury to determine whether a witness has sworn falsely. Although the testimony of the prosecutrix contains contradictions and although her testimony be contradicted by other witnesses, it is still the duty of the jury to determine whether they will believe or disbelieve the prosecutrix. (*People* v. *Becker, supra.*)

But, even though the testimony of the prosecutrix contains glaring inconsistencies and contradictions, the appellate court must accredit to the decision of the trial judge a familiarity with the witnesses and their testimony and assume that in denying a new trial he acted with understanding and with a regard for the function of the jury. Those instances in which the appellate courts have overridden the conclusions of the jury and the trial courts are where the testimony of the complaining witness is uncorroborated and it is so obviously and so inherently false and unbelievable that reasonable minds may not differ with respect to its character. (*People* v. *Jefferson,* 31 Cal. App. (2d) 562, 566 [88 Pac. (2d) 238].) For testimony which has effected a conviction by a jury with the approval of the trial court "to justify a reversal on that ground it should clearly appear that the verdict is the result of passion and prejudice." (*Ibid. People* v. *Lewis,* 18 Cal. App. 359 [123 Pac. 232].)

The testimony of the husband and the police officers in describing the condition of the prosecutrix upon their arrival at her home; the fact that she reported the incident immediately following its occurrence; the presence of scratches upon appellant's face and the tear in his shirt,—all these corroborated the young woman's story and render innocuous the apparent inconsistencies of the prosecutrix' testimony.

The assignment that the trial court erred in allowing the police officer Meza to testify for a second time is without support. It appears that when the officer first testified, the reporter was absent. When that fact was brought to the attention of the court, appellant's counsel promptly

stipulated that the witness had not been on the stand before. There was no objection to his repeating his testimony. If it was error for him to do so appellant consented to it at the time and he cannot therefore demand a reversal on that ground. (*People* v. *Casey,* 79 Cal. App. 295, 306 [249 Pac. 525]; *People* v. *Pettinger,* 94 Cal. App. 297, 301 [271 Pac. 132]; *People* v. *Stone,* 199 Cal. 610, 623 [250 Pac. 659]; *People* v. *Ho,* 24 Cal. App. 451, 462 [141 Pac. 950].) Moreover the attempted flight of appellant as related by the officer Meza on the stand was not denied by appellant. No prejudice therefore could have resulted if he had repeated his story twice. (Constitution, art. VI, sec. 4½; *People* v. *Ho, supra.*)

The judgment and the order denying a new trial are affirmed.

Wood (W. J.), J., and McComb, J., concurred.