[Crim. No. 3859. Second Dist., Div. One. May 28, 1945.]

THE PEOPLE, Respondent, v. MARION OSCAR McBRIDE, Appellant.

Gladys Towles Root for Appellant.

Robert W. Kenny, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

YORK, P. J.—Defendant was charged in an information filed by the district attorney with a violation of section 288 of the Penal Code committed upon a seven-year-old girl. A jury trial having been duly waived, the court found defendant guilty as charged, denied his application for probation and sentenced him to state prison for the term prescribed by law. From the judgment of conviction which was thereafter entered, defendant prosecutes this appeal on the grounds that (1) the judgment is contrary to the law and the evidence; and (2) the court committed errors of law.

The evidence adduced at the trial herein discloses that on July 3, 1944, the complaining witness, hereinafter referred to as Alberta, was approximately seven and a half years old and resided with her mother and two brothers in the city of Los Angeles; that Rose Marie, aged five, lived next door, and Leah, aged four, lived in the house on the other side of Alberta's house; that the three children played together often. For a year and a half prior to July, 1944, appellant had lived in a house on the rear of the lot on which Alberta lived, and during July, 1944, he was living there alone. His house contained a bed-living room in which there was a regular bed, a kitchen, a bathroom, a small back room and a screened porch. The three girls often went to appellant's house to play.

On the day in question, the three girls went into appellant's house where he was in the kitchen preparing his lunch. While they were there, Alberta's mother was away from home fifteen minutes or half an hour. During this time, Alberta, who was wearing a bathing suit, went home to see if her mother had returned and finding her still away, the child returned to appellant's house, where she saw appellant in bed in the bed-living room under the covers. The three girls went into the bed-living room and Alberta sat on the bed. They talked for a while, and then appellant got out from

under the covers and lay on top of Alberta, who was then lying on her back on the bed, and put "the thing that a man goes to the bathroom with" between her legs, under the skirt of her bathing suit, but outside the panties thereof. Alberta testified that when appellant did this, Rose Marie and Leah were on the porch, but both girls testified that they were in the bed-living room watching him do it. In Alberta's presence, appellant then repeated the act with the other two girls. Appellant told the girls not to tell and they left his house together each returning to her own home. Alberta's mother was not at home when Alberta reached there, but she did return between 2 and 3 o'clock in the afternoon of July 3, 1944, when she discovered Alberta in the bathroom crying, at which time Alberta made a complaint to her regarding the occurrence which took place in appellant's house.

█ In connection with his first point, appellant urges that the testimony of the prosecutrix and that of the two small girls, aged five and four, in whose presence the alleged acts were committed, is so improbable as to be unbelievable, and so filled with uncertainties and inconsistencies that it "amounts to no evidence at all."

In *People* v. *Becker*, 140 Cal.App. 162, 165 [35 P.2d 196], in which it was urged that the testimony of the complaining witness was so inherently improbable in essential features as to render it valueless, the court stated: "Notwithstanding contradictions and inconsistencies, it cannot be said that the latter's testimony 'is so obviously and so inherently improbable as to leave the court no recourse, without self-stultification, except to reverse the judgment'; and this must 'plainly appear before the reviewing court should assume the functions of the trial jury'. (*People* v. *Antunez*, 28 Cal.App. 740, 742 [153 P. 963].)

" 'Contradictions and inconsistencies in the testimony of a witness alone will not constitute inherent improbability' (*People* v. *Amadio*, 25 Cal.App. 729 [145 P. 151]), and 'it is not sufficient that the testimony may disclose circumstances which are unusual' (*People* v. *Collier*, 111 Cal.App. 215, 226 [295 P. 898]). 'It is the peculiar and exclusive province of the jury to decide upon the credibility of witnesses; and although impeaching evidence in the nature of contradictions or other-

wise has been received, it is still not only the right but the duty of the jury to determine to what extent they will believe or disbelieve the testimony of the witness thus assailed.' (*People* v. *Raich,* 26 Cal.App. 286 [146 P. 907].)'' See, also, *People* v. *Asavis,* 27 Cal.App.2d 685, 688 [81 P.2d 595], where the following statement appears: ''We are not directed to, nor do we find in this record, anything that would justify this court in stamping the story of the prosecutrix as inherently unbelievable or even improbable. As was said in *People* v. *Haydon,* 18 Cal.App. 543 [123 P. 1102], 'A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable *per se,* must involve, we think, a claim that something has been done that it would not seem possible could be done under the circumstances disclosed, or involve conduct that no one but a person of a seriously calentured mentality would be likely to do.' ''

While minor discrepancies and lack of memory as to details concerning unessential matters appear in the testimony of Alberta, her version of the occurrence is not so inherently improbable as to require or justify a reversal of the judgment. Her description of appellant's acts is sufficiently clear and direct to establish the commission of acts prohibited by section 288 of the Penal Code. Moreover, her testimony with respect to the act which appellant performed on her was corroborated by the testimony of Leah and Rose Marie, and while it is true that some inconsistencies and contradictions appear in the testimony of these two children, aged four and five years, their description of what occurred at the time in question and appellant's participation therein is entirely consistent. Suffice to say that, tested by the rules of law hereinbefore enunciated, the testimony of these witnesses was not of that type which could be characterized as so uncertain and inconsistent as to amount to no evidence. To the contrary, the evidence so presented sufficiently and substantially supports the judgment of conviction.

As justification for a reversal of the judgment herein, appellant also urges the point that, in striking from the record the testimony of Leah and Rose Marie concerning acts which appellant committed against them, the court erred in that it did not strike from the record the testimony of Alberta concerning such alleged offenses against the two other children,

citing *People* v. *Huston,* 45 Cal.App.2d 596, 597 [114 P.2d 607]. In that case the court held "that the trial court committed prejudicial error in permitting the prosecution to introduce over objection evidence that on prior occasions defendant with minor female children other than the prosecuting witness had committed or attempted to commit offenses prohibited by section 288 of the Penal Code."

The testimony of Alberta, to which attention is here directed and as to which no objection was interposed at the trial, is as follows: "Q. Now, where were you when you say he put his thing next to you? A. On the bed. Q. And where was Rose Marie? A. They were on the back porch. . . . Q. You say you were on the bed. . . . Was Rose Marie with you when you sat on the bed? A. They were on the back porch. Q. Did Rose Marie come in the bed room? A. Yes. . . . Q. What position were you in when he did that to you? A. I was lying on my back. Q. By the Court: Was (he) standing up or sitting down somewhere, or what was he doing at that time? A. I can remember that he laid on top of me. Q. He laid on top? A. Yes. Q. On top of what? A. On us. Q. On us? A. Yes. Q. Who was us that you are talking about now? A. Me and Leah and Rose Marie. Q. By Mr. Russell: You mean that he did that to all three of you? A. Yes. Q. Who did he do it to first? A. Me. Q. And was Rose Marie there on the bed when he did it to you? A. They were on the back porch. Q. When did he do it to Rose Marie? A. Right after he got through doing it to me, and then he did it to Leah. Q. What? A. Right after he got through doing it to me. Q. Were you still on the bed when he did it to Rose Marie? A. Yes. Q. Where were you? A. At the door. Q. What door was that? A. The front door. Q. Did you see him do it to Rose Marie? A. Yes. Q. And did you see him to it to Leah? A. Yes, and then we went home. Q. Wait a minute. Where were you when you say you saw him do it to Leah? A. At the front door. Q. You were still at the front door? A. Yes. Q. Where was Rose Marie? A. At the front door, too."

Both Leah and Rose Marie testified that they were present in the bedroom and saw appellant commit the offense against Alberta.

With respect to the admissibility of evidence of other acts of the same character, it is stated in 22 Corpus Juris Secundum

1160, that "In the case of crimes involving illicit sexual relations or acts," such evidence "may ordinarily be shown, not as proof of independent substantive offenses, but as corroborative evidence to show a disposition upon the part of accused and as tending to support the specific offense for which he is being tried. It is ordinarily held under this rule, that the conduct of accused with a person other than the one connected with the offense charged is not admissible, unless . . . *his acts are parts of the same transaction. . . .*"

In *People* v. *Hunt*, 17 Cal.App.2d 284, 286 [61 P.2d 1208], a prosecution for violation of section 288 of the Penal Code: "It was testified that at the same time and place as the commission of the acts charged in the information, appellant committed similar acts with two of the playmates of the prosecutrix. To the introduction of this testimony appellant objected, but, inasmuch as the evidence shows that the three little girls involved were all present at the same time, and that appellant then and there, in their presence, committed the same acts upon all of the children, such acts were part of the *res gestae* and, under such conditions, the testimony was admissible. (*People* v. *Cuilla*, 44 Cal.App. 719 [187 P. 46]; *People* v. *MacDonald*, 53 Cal.App. 488, 491 [200 P. 491].)"

Applying the foregoing principles of law to the facts presented in the instant prosecution, appellant suffered no prejudice when the trial court failed to strike of his own motion the testimony of Alberta with respect to similar acts committed by appellant upon the other two children.

For the reasons stated, the judgment is affirmed.

Doran, J., and Drapeau, J. pro tem., concurred.